## Brennen v. Brennen

Before Carr, P. J., Morrow and Cottom, JJ.

*Wade K. Newell*, for plaintiff.

*N. J. Comfort*, for defendant.

CARR, P. J., January 10, 1952.—We have here to consider the effect of the vacation of a decree of divorce after one of the parties had remarried again.

James Brennen, plaintiff, and Adrienne Brennen, defendant, were married at Morgantown, in Monongalia County, West Virginia, on January 1, 1937, and thereafter lived together in that State as man and wife for about two years. They then came to Brownsville, in this county, and continued to live together until February 19, 1947, when they separated; and on February 26, 1951, he instituted in this court the present proceeding for an annulment of his marriage to her on the ground that at the time it was contracted a prior marriage between him and another woman still subsisted.

The record discloses that on August 14, 1919, he had been married to one Mabel Epley at Uniontown, in this county; that they later separated and he moved to West Virginia, where, in 1936, he applied to the Circuit Court of Monongalia County for a divorce from her, and on October 22, 1936, procured from that court a decree in chancery in these terms: "It is therefor adjudged, ordered and decreed that the marriage heretofore celebrated and existing between the parties hereto shall be and the same is hereby dissolved, and the said plaintiff is granted a divorce a vinculo matrimonii . . . It is further adjudged, ordered and decreed that neither of the parties hereto shall marry within sixty days from the date of this decree, unless they shall again marry each other"; but that on January 21, 1937, defendant therein, having been served with process only by publication and not having appeared in the case before the date of the decree, petitioned the court for a rehearing; and that, on March 29, 1938, the court finding that she was entitled to a decree of divorce in her favor as prayed for in her answer in the nature of a cross-bill, entered a decree granting a divorce a vinculo matrimonii to her. The rehearing was allowed under section 14 of chapter 124 of the West Virginia Code then in effect, which provided that any defendant who was not served with process in that State and did not appear in the case before the date of the decree might, within two years, file a petition to have the proceeding reheard and thereupon be admitted to make defense against the decree as if he or she had appeared in the case before it was rendered.

The authority of the courts of Pennsylvania to annul marriages is defined by the Act of July 15, 1935, P. L. 1013, 23 PS §12(a), which reads as follows:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void. . . ."

Thus plaintiff can succeed only if the marriage he now seeks to annul was absolutely void when contracted, and not merely voidable; and accordingly, the question is whether the fact that plaintiff's decree of divorce was subject for two years to being reopened and set aside made it inoperative during that period. It is not contended that the West Virginia court lacked jurisdiction or that the decree was procured by any fraud or other imposition upon the court.

We take judicial notice that at the time of the entry of the original decree the only restriction expressly imposed by the statutory law of West Virginia upon the right of parties divorced by its courts to marry again was that prohibiting their remarriage within 60 days, unless to each other. Yet not even during that period was the operation of the decree suspended. On the contrary, the marriage dissolved by it was treated as so unqualifiedly and unconditionally terminated that if the former spouses had desired to resume marital relations with each other they would have been obliged to contract a new marriage. In language the effect of which is universally recognized and to which nothing was added to indicate any other intention, the decree purported to be in all respects a complete and final dissolution in praesenti of the bonds of matrimony. It was subsequently vacated not because it was found to be a nullity but simply because

in the light of the testimony adduced at the rehearing the court took a different view of the merits of the case. It follows, we think, that plaintiff's remarriage cannot be annulled; it was not, as our statute requires, absolutely void when contracted, but merely voidable: See Criss v. Industrial Commission et al., 348 Ill. 75, 180 N. E. 572; Commonwealth v. Smith, 7 D. & C. 658.

### Decree

And now, January 10, 1952, upon consideration of the foregoing case, the exceptions ex parte plaintiff to the findings, conclusions and recommendations of the master are overruled, and the complaint is dismissed, at the cost of plaintiff.